UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACK BURNHAM, individually and as the trustee for CORA BURNHAM REVOCABLE LIVING TRUST,

   Plaintiff,

   v.

CITY OF SEDRO-WOOLLEY,

   Defendant.

CASE NO. C05-24JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment. Defendant, the City of Sedro-Woolley (the "City") seeks summary judgment against all of Plaintiff Jack Burnham's claims. (Dkt. # 10). Mr. Burnham seeks summary judgment in his favor on the same claims. (Dkt. # 13). Neither party has requested oral argument, and the court finds these motions appropriate for disposition on the basis of the parties' briefing and accompanying declarations. For the reasons stated below, the court GRANTS the City's motion, DENIES Mr. Burnham's motion, and directs the clerk to enter judgment in favor of the City. The court also DENIES Mr. Burnham's motion to amend his complaint (Dkt. # 17), as the court's disposition of the summary judgment motions renders that motion moot.

ORDER – 1

## II.  BACKGROUND

Mr. Burnham is the trustee for the Cora Burnham Revocable Trust.  The trust owns a 1.6-acre plot of land (the "Property") in Skagit County (the "County").  No one disputes that the Property lies outside the City but within the City's Urban Growth Area.

Beginning in 2001, Mr. Burnham sought to subdivide the property into four lots.  Under the Skagit County Code, which adopts portions of the Sedro-Woolley Municipal Code ("City Code"), Mr. Burnham needed to comply with sewer requirements and "half-street" requirements before obtaining approval for the subdivision.  The half-street requirements obligate property owners seeking to improve property to make improvements (e.g. paving, curbs, sidewalks) to the half of any street abutting the property.  In 2001, Mr. Burnham met with City officials.  They informed him that they typically waived the half-street requirements in exchange for a property owner's waiver of his right to protest future local improvement district regulations.

In November 2001, Mr. Burnham submitted a formal request for a variance of the sewer requirements.  The Skagit County Hearing Examiner's Office held a hearing on the variance in March 2002 and granted it in April 2002.  Mr. Burnham made no formal request for a variance of the half-street requirements.

In January 2002, the City gave Mr. Burnham its first indication that its policy of granting informal waivers of the half-street requirements was changing.  By February 2002, the City sent him a letter requesting that he meet with them to discuss a compromise that might lead the City to waive opposition to the subdivision.  This led to a series of negotiations that ultimately proved unsuccessful.  The City was willing to waive some of the half-street requirements, but still insisted on more street improvements than Mr. Burnham wanted.  In November 2002, Mr. Burnham submitted a second petition for approval of his proposed subdivision.  The City objected, noting that Mr. Burnham had

ORDER – 2

not complied with the half-street requirements. The County denied the application in January 2003, noting that the County Code did not permit it to grant subdivision approval unless the City had waived compliance with the half-street requirements, or the landowner had obtained a formal variance. It instructed Mr. Burnham to formally petition for a variance from the half-street requirements. More negotiations ensued. Mr. Burnham did not apply for a formal variance until November 2003.

Initially, the City and County each objected to the variance, insisting on compliance with portions of the half-street requirement. The County hearing examiner scheduled a hearing for February 11, 2004. On February 10, 2004, the County unexpectedly withdrew its objection and recommended approval of the variance. At the February 11 hearing, the City requested a continuance so that it could provide additional briefing in light of the County's change in position. The hearing examiner granted the continuance and received supplemental briefing from the parties.

On April 13, 2004, the hearing officer approved Mr. Burnham's request for variance, conditioned only on his waiver of protest to the local improvement district regulations. For reasons that are not clear from the record, Mr. Burnham delayed the waiver until August 2004. On August 16, 2004, Mr. Burnham obtained his variance from the half-street requirements.

A few months later, Mr. Burnham brought this action against the City. He contended that the City's interference with obtaining subdivision approval violated his substantive and procedural due process rights under the United States Constitution. He also contends that the City violated the Constitution's takings clause.[1] He seeks

---

[1] Mr. Burnham also brought a claim against the City under RCW § 64.40.020, but he concedes that this claim is time-barred.

ORDER – 3

compensation for the delay and expense that he contends the City caused him by not agreeing to waive the half-street requirements. The parties now seek to dispose of this action on summary judgment.

## III.  ANALYSIS

In examining these cross-motions, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). Where a question presented is purely legal, summary judgment is appropriate without deference to the non-moving party.

**A.  The County, not the City, Had the Power to Determine Mr. Burnham's Land Use Rights.**

The court first examines the law that governed Mr. Burnham's property rights, an examination that establishes unequivocally that the County, not the City, possessed the decision-making and law-making power. In 1999, the City and County entered into an Interlocal Agreement governing zoning and development standards in the Sedro-Woolley Urban Growth Area. Under the Interlocal Agreement, the County agreed to "take measures necessary to apply and enforce the City's development standards," and to

ORDER – 4

"adopt and enforce the City development regulations" in the Urban Growth Area. Interlocal Agreement, Sect. 2. The County retained all decision-making power, however, as it refused to "transfer to the city the ability to approve or deny comprehensive plan amendments, rezones, land divisions, . . . etc." for the Urban Growth Area. Id. The parties agree that the County adopted the portion of the City Code that contained the half-street requirements, but it is undisputed that only the County could enforce the requirement in the Urban Growth Area. The City only had the power to recommend and to participate in the County's decision-making process. The City also had the power to delay subdivision approval by declining to recommend approval,[2] but it had no power to prevent a landowner from obtaining a formal variance. As the County hearing officer's decision on Mr. Burnham's request for a variance emphatically demonstrates, the County was under no obligation, *de jure* or *de facto*, to defer to the City.

Because the County possessed the law-making and decision-making power over Mr. Burnham's property, and the County is not a defendant in this action, Mr. Burnham's claims are tightly constrained. For example, Mr. Burnham contends that Section 16.16.120 of the City Code, which establishes the half-street regulations, was unconstitutional. Burnham Mot. at 12. Mr. Burnham ignores that only the County applied this section of the City Code, and did so only because the County adopted it into

---

[2]It is unclear from the text of the County Code and the City Code provisions that it adopts that the County was required to give effect to the City's refusal to defer to subdivision or short plat approval. Nonetheless, a letter from the County Planning and Permit Center demonstrates that the County deferred to the City's refusal to waive the half-street requirements when it denied Mr. Burnham subdivision approval. Hayden Decl. Ex. 12. At the same time, the letter instructed Mr. Burnham to petition the County for a variance from the half-street requirements. Id. The County did not defer to the City when granting the variance.

ORDER – 5

the County Code. The court cannot reach Mr. Burnham's challenge to the constitutionality of the County Code, because the County is not a party to this action.

In examining Mr. Burnham's claims that the City's violations of his civil rights give rise to liability under 42 U.S.C. § 1983 ("§ 1983"), the court need only decide if the City's participation in the County's decision making with respect to the Property violated the law. Section 1983 creates a remedy against a person acting under color of law who subjects a person to a deprivation of rights secured by the Constitution or other laws. An analysis of Mr. Burnham's three[3] claimed constitutional violations shows that he cannot prevail on his § 1983 claim as a matter of law.

**B.     Mr. Burnham's Substantive Due Process and Takings Claims Fail Because the City Did Not and Could Not Render a Final Decision on the Property.**

Although the due process clause and takings clause provide distinct protections to landowners, they have a common element that is fatal to Mr. Burnham's claims. The Constitution's due process clause "includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." Halverson v. Skagit County, 42 F.3d 1257, 1261 (9th Cir. 1994) (quoting Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1407 (9th Cir. 1989)). The takings clause prevents the government from taking private property without just compensation to its owner. Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1453 (9th Cir. 1987). As no government unit actually took Mr. Burnham's property, the court construes his claim as one for a "regulatory taking" – a regulation that so restricts the owner's use of his

---

[3] The City insists that Mr. Burnham did not plead a violation of the takings clause in his complaint. For purposes of the instant motion, the court will treat the complaint as if Mr. Burnham properly asserted a takings clause violation.

ORDER – 6

property that it can be considered a taking. See id. Courts have consistently held, however, that only final decisions of government units are appropriate fodder for a substantive due process claim or a regulatory takings claim. In Kinzli, for example, the court held that it could not consider a regulatory takings claim unless the governmental defendant has rendered a "final and authoritative determination" that "expose[s] the nature and extent of permitted development." Id. (internal citation omitted). Similarly, a substantive due process violation requires that the defendant "ma[k]e a final decision regarding the property" in question. Id. at 1456.

In this case, the City never made a final decision on Mr. Burnham's property rights. It preliminarily indicated that it would waive the half-street requirements, then changed course and insisted on at least partial compliance. The City did not, however, make any final decision. The only entity with the power to do so was the County. Mr. Burnham therefore cannot establish that the City violated the takings clause or Mr. Burnham's substantive due process rights.

**C.   Mr. Burnham Has No Procedural Due Process Claim Because the City's Procedures Did Not Affect the Ultimate Decision on His Property Rights.**

The procedural aspect of the due process clause requires that a governmental entity have appropriate procedures in place before depriving a person of life, liberty, or property. E.g., Halverson, 42 F.3d at 1260. Mr. Burnham's claim here fails because the City is not responsible for the procedures governing the use of the Property. As noted above, the County retained exclusive legislative and final decision-making power with respect to the Property. Although it is not clear which City procedures Mr. Burnham is challenging, it is clear that those procedures did not have the effect of depriving Mr. Burnham of life, liberty, or property. The County Code established the procedures that apply to Mr. Burnham, and the County is not a party to this action.

ORDER – 7

At the core of this action is Mr. Burnham's claim that he deserves compensation for the delay and additional expense that the City caused by attempting to enforce the half-street requirements. The court notes that Mr. Burnham, not the City or County, caused much of the delay. When Mr. Burnham sought a waiver of the sewer requirements in 2001, he petitioned the County for a variance and promptly received one. Mr. Burnham did not petition the County for a variance from the half-street restrictions until November 2003, more than a year and a half after he received the sewer variance. The court appreciates that Mr. Burnham was attempting to negotiate an informal resolution by reaching an agreement with the City, but Mr. Burnham, not the City, must bear the consequences of that decision.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS the City's motion for summary judgment (Dkt. # 10) and denies Mr. Burnham's cross-motion (Dkt. # 13). The court directs the clerk to enter judgment for the City. In addition, the court DENIES Mr. Burnham's motion to amend his complaint (Dkt. #17), as the court's disposition of the summary judgment motions renders that motion moot.

Dated this 22nd day of July, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 8